May it please the Court, Frank McCabe for Appellant Narrah Brown. I recognize that the federal courts should not interfere with ongoing state criminal proceedings with the exception of extraordinary circumstances. But I would urge the Court that this is that rare case. I'm sorry, I'm having difficulty hearing you. I'm sorry? I was having difficulty hearing you. I can hear you fine if you pull that microphone closer. Okay. Is this good, Judge Huck? I'll try to talk a little louder. I think this is the rare case that there are extraordinary circumstances justifying the federal courts intervening. When the briefing was completed, Mr. Brown had been incarcerated for four-and-a-half years, and still there had been no trial. He had a preliminary hearing, though, right? He did. He did. Two preliminary hearings. He had two preliminary hearings back in 2009. Right. But now — There was reason for delays, it would seem, in this case. I think there's — as in the McNeely case that I think is the key case here, there's a mixture of reasons. There — he did go, as McNeely did, to state hospital for a period of time. He went for approximately seven months. But as an example, from the time he was ordered by the superior court judge to the time he arrived at the Tascadero was four months. It is certainly not applicable to the appellant. The court has received a letter that was jointly sent by the parties on January 24, advising the parties — advising the court of what's happened since. And if it's appropriate, I can tell the court that my understanding is that Wednesday of this week, there will be a hearing at which the superior court judge may set the trial date, which it's understood will be in May or June. That, however, will be a trial on appellant's competence. Competence. And it's a retrial of the trial back in December at which the jury voted — they were hung jury. They voted 10-2 that he was incompetent. It just doesn't seem like there — you know, in the McNeely case, you get the impression that they couldn't figure out what had happened to Mr. McNeely. But here, as Judge Fletcher mentioned, there's lots of things happening with Mr. Brown. There are, but it's a lot of spinning of wheels, from what it appears. There's a declaration in the record. You know, having a trial over his competency isn't like spinning one's wheels. Well, if I can go back a little bit. It's a serious matter. It is a serious matter. By the convening of a jury. That's true. What happened back in June of 2011 is that his attorney advised the court that he had a doubt as to the appellant's competence. The court apparently ignored that. There was no referral to a psychiatrist. And then in August, it went to a trial department. There were some pretrial matters. A jury was picked. The appellant's attorney kept saying, I have a serious doubt as to this man's competence. And it wasn't until the first few days of trial in October that the court finally agreed and appointed psychiatrists. And then suspended the, or discharged the jury on that trial on the merits and began a trial in December on competence. So, and that was a hung jury. Now, a new attorney has been appointed to handle the competence trial. That trial is going to be in May or June, it's anticipated. I agree, things are happening. But they're happening at a snail's pace. And meanwhile, the appellant has spent five years, in two weeks, it will be five years in custody short of trial. I mean, we're getting to the point where it's very likely that he is serving his sentence, serving maybe his entire sentence. I don't know what the maximum would be. That's not a part of the record. But before he is actually tried. And I think that is the problem. I realize McNeely is different in that there never was a pretrial in McNeely. But I don't think that the law should be, or the federal law should be, that once you have a pretrial, then you can take as long as you want before you get the guy to trial. Well, things have been happening here. It's not like they've forgotten Mr. Brown. No, they haven't forgotten Mr. Brown. But they are taking an unduly long period of time to get anything done. Do you think the federal court should get involved in hearings as whether this is too long or not too long when the state is apparently doing its job and doing it deliberately but appropriately? I think the federal courts should get involved very, very seldom. And as decisions have said, it should be a very rare case. I think this is a rare case. For a number of years, Mr. Brown has been attempting to get some relief. He's filed, when the briefing was done, 32 petitions and writs in the California courts. By now it may be more. And in none of those petitions was he ever afforded an attorney. And in almost all of those petitions, the courts, the appellate courts, decided the case summarily, in many cases within two or three days. They never ordered an issue, an order to show cause. They never required the respondent, be it the attorney general or the Alameda County Superior Court, to file any kind of a response. And that's why we don't have a very complete record here. And I think all Mr. Brown is looking for is a day in court with regard to protecting his rights, so that Alameda County doesn't take six or seven or eight or nine years to bring him to trial. And I would ask that the matter be remanded to the district court for the issuance of an order to show cause and the appointment of counsel in the United States district court so that someone can look at everything and determine exactly whether these proceedings are simply the spinning of wheels or whether they are. So what's the relief you're seeking? I would ask. Say that again. I would ask that the matter be remanded to the district court. For what purpose? For the issuance of an order to show cause and for the appointment of counsel for Mr. Brown. And if the court feels it's appropriate to order him released from custody, because he's basically serving his sentence or maybe more than his sentence before he ever comes close to getting trial on the merits.  Thank you. You want to save the time for rebuttal? Yes, I would, please. Thank you. Good morning. Jill Thayer on behalf of the Respondent. Just starting with the Younger and Carden, which Respondent believes is the correct case and analysis. I hear you. I probably hear you. I'm sorry. Is this better? I'm usually pretty loud. Just keep your voice up. All right. Younger and Carden, the 1980 Carden v. Montana are the correct standards to consider. And in this case, the petitioner just simply hasn't shown any bad faith or harassment or any other extraordinary circumstance warranting federal court intervention in this case. There's just no evidence of bad faith or harassment by the prosecution. The entire petition shows that the courts, the prosecution, everybody except petitioner, is really trying to move this case along. And the delay due to competency proceedings is not attributable to the prosecution or to the courts. He's also entered time waivers. You can see in the record there's been different periods he's entered time waivers. He's had multiple attorneys, filed multiple Marsden motions, many writs, and he's had one defense attorney, actually a couple have had to declare conflicts. And then when he gets a new attorney, that attorney has to get up to speed on the case. So unfortunately there's been a long delay, but he has had preliminary hearings in both cases. The first one involved three robberies. They're both three strikes cases. So he has not come close to serving his term. The first is three robberies he's been held over on, and the second case was four robberies. So now it's seven robberies that are going to be tried, and were beginning to be tried when the competency issue came up. And it's interesting also to note that from the very beginning he's been seeking not just saying, you know, hurry my trial up, like in Braden or some of these other, Huey was another one where a state court, a state defendant is saying, give me my trial. He's looking for a get out of jail free card. That's what he's looking for. He's not asking for his trial right away. He's saying, I want you to stay in my trial, and I want to be released from custody, and I don't want to go to prison on my three strikes, seven robbery cases. So that's the situation in this case. I know this court is very aware of that. And then the second point that I would like to make, and I made in the briefs, is the issue with McNeely. And I said it forcefully in the briefs, but that case is very confusing to have out there, because although it was, I don't know what happened. It's hard to tell totally from the record. And I don't know why that court did not even consider Younger or Carton, but it did grant federal habeas release, and it did say it put the burden on the prosecution, even though proceedings seemed to be ongoing. It was hard to tell because of the record. They couldn't figure out the record. The court was very upset with the status of the superior court record, which was totally confusing. That's correct. And I don't know what happened. I mean, that's part of the problem, that it doesn't say, well, the problem is the record or the problem is, you know, it's just hard to tell because what it did is Why can't we just distinguish McNeely and just put it in its little cabin? Or maybe we should call for an embankment and try to get rid of it. That's this court's call. But I would vote for the embankment because I think it is confusing. If the problem was, look, we don't know the record, or who knows, the DA just gave up, because they did say something about prejudice to further criminal proceedings, but not to a civil commitment, which makes me think, well, maybe the parties all just sort of agreed, well, let's just, you know, put them. But if that was the case, it shouldn't be published. And it's just as confusing that they also, Younger and Cardin, they all put the burden on the petitioner to say, you need to show that the federal court needs to intervene. And so in McNeely, it went straight to a Barker versus Wingo analysis, and it put the burden right on the prosecution, and it blamed the prosecution for not providing a record, because it said, I guess, the magistrate ordered it and the prosecution didn't. It's hard to tell what exactly happened. But it is a problem having it on the record where there is something of a conflict. But it's quite unfair to Mr. Brown to look at McNeely and say, look, that's me. Get out of jail free. Yeah. Well, the facts are, I mean, the factual background is significantly different, I thought. You're correct. It is correct. There's not even a preliminary hearing. In McNeely. McNeely. That's correct. They already had two preliminary hearings. They already swore in a jury. I mean, in Mr. Brown's case, they swore in a jury on the merits. Right. And they're continuing to proceed. It's not even comparable. I agree. And I would also say it was kind of unfortunate in McNeely that they all freaked, well, that's not the right word, but they got concerned that there was a federal court case going on, and so then they just stayed everything in state court, which is probably not the right way to go. And so we've been encouraging things to move along, but they've been going on at a snail's pace, and I will say that. But that's not necessarily the prosecution's fault at this point. So I'll submit. Well, I think the history of this case can be categorized by this. Psychiatrists found that Brown was incompetent. He got sent to a cascadero. He spent seven months there. They released him and said he needs to be on this particular medication. The Alameda County Jail said, we're not going to give him that medication. So his problems, his mental problems increased. And they increased to the problem that his attorney last June exercised a doubt as to whether he was competent to stand trial. It wasn't until they got into trial in October that the judge agreed with his attorney and said, well, let's do it. Let's have him examined again. He was examined. Psychiatrists said, well, he's got a problem. He may be incompetent. Ten out of 12 jurors agreed that he was incompetent. Now, let's say he gets to a cascadero again. They give him the same medication or some new medication. He gets back to the county jail. The county jail says, we won't give him that medication. And he becomes incompetent again. And that appears to be what could happen here. And even though he had two-and-a-half to three years ago preliminary hearings, I would suggest that two-and-a-half to three years from a preliminary hearing to trial, with no trial in sight, I mean, only a trial in the spring on competence, is a situation that, and I also finally want to say that Mr. Brown alleged in his petition, and there's been no OSC, so no countering, he says, well, let's have him examined again. And that's his position. Thank you very much. Thank you.
judges: Hug, Fletcher, Paez